UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

SANDRA BUCHANAN

              Plaintiff,

      v.                             **REPORT AND RECOMMENDATION**
                                       **1:08-CV-0854 (TJM)**

COMMISSIONER OF SOCIAL SECURITY,

              Defendant,

## I.    Introduction

Plaintiff Sandra Buchanan brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security  ("Commissioner"), denying her application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").[1] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying her applications for benefits was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds the Commissioner's decision is supported by substantial evidence and determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment on the pleadings be denied and Defendant's cross-motion for judgment on the pleadings be

---

[1] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated March 13, 2009.

granted.[2]

## II.    Background

On March 18, 2005, Plaintiff, then a 33 year-old health aide, filed an application for SSI and DIB (R. at 97-99), claiming disability since June 17, 2004, due to two hip replacements and degenerative disc disease (R. at 111, 121).[3] Her application was denied initially on July 19, 2005 (R. at 56, 58-63). Plaintiff filed a timely request for a hearing on August 22, 2005 (R. at 53-54).

On July 31, 2007, Plaintiff and her attorney appeared before the ALJ (R. at 281-318).The ALJ considered the case *de novo* and, on January 15, 2008, issued a decision finding Plaintiff was not disabled (R. at 17-32). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review on June 10, 2008 (R. at 4-8). On August 7, 2008, Plaintiff filed this action.

Based on the entire record, the Court recommends the Commissioner's decision be upheld because the Appeals Council acted in accordance with the regulations and the ALJ's decision is supported by substantial evidence.

## III.    Discussion

### A.  Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v.

---

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).
[3] Citations to the underlying administrative record are designated as "R."

Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the
Commissioner's determination will only be reversed if the correct legal standards were
not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817
F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the
ALJ applied correct legal principles, application of the substantial evidence standard to
uphold a finding of no disability creates an unacceptable risk that a claimant will be
deprived of the right to have her disability determination made according to the correct
legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.
Califano, 615 F.2d 23, 27 (2d Cir. 1979).   "Substantial evidence" is evidence that
amounts to "more than a mere scintilla," and it has been defined as "such relevant
evidence as a reasonable mind might accept as adequate to support a conclusion."
Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed
susceptible to more than one rational interpretation, the Commissioner's conclusion
must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

    "To determine on appeal whether the ALJ's findings are supported by substantial
evidence, a reviewing court considers the whole record, examining evidence from both
sides, because an analysis of the substantiality of the evidence must also include that
which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258
(2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must
be sustained "even where substantial evidence may support the plaintiff's position and
despite that the court's independent analysis of the evidence may differ from the
[Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other
words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a *de novo* review."

Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation

process to determine whether an individual is disabled as defined under the Social

Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability to do
> basic work activities. If the claimant has such an impairment, the third
> inquiry is whether, based solely on medical evidence, the claimant has an
> impairment which is listed in Appendix 1 of the regulations. If the claimant
> has such an impairment, the [Commissioner] will consider him disabled
> without considering vocational factors such as age, education, and work
> experience; the [Commissioner] presumes that a claimant who is afflicted
> with a "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has the
> residual functional capacity to perform his past work. Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then
> determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**B. Analysis**

**1. The Commissioner's Decision**

The ALJ followed the sequential evaluation and made the following findings. At

step one, the ALJ found that although Plaintiff had earned some money since her

alleged onset date, it did not rise to the level of substantial gainful activity (R. at 22). The

ALJ concluded that Plaintiff's severe degenerative joint disease of both hips and history

of bilateral total hip replacement was a severe impairment, but that Plaintiff's depression

was not a severe impairment (R. at 22-26). At step three, the ALJ concluded Plaintiff's

medically determinable impairments did not individually or in combination meet a Listed

impairment (R. at 26). The ALJ determined that Plaintiff possessed the following

residual functional capacity ("RFC"):

> [She can] lift, carry, push, and pull ten pounds occasionally and less than
> ten pounds frequently. She can stand and/or walk for two hours in a
> workday with normal breaks with standing limited to about 60 minutes at a
> time after which [she] would need to sit for a few minutes before resuming
> standing. Walking is limited to short distances of a block or so several
> times a day. She can sit six hours in a workday with normal breaks with
> sitting limited to about sixty [minutes] at a time, after which [she] would
> need to stand or walk a few minutes before resuming sitting. She can
> occasionally balance, climb stairs and ramps, crawling, crouching,
> stooping, and kneeling. She can never climb ladders, ropes or scaffolds.
> She must avoid concentrated exposure to temperature extremes and
> vibrations. She must avoid all exposure to unprotected heights.

(R. at 26). Based on her RFC, the ALJ concluded Plaintiff could perform a wide range of

sedentary work, but could not perform her past relevant work as a home health aide (R.

at 30). To determine the extent to which Plaintiff's limitations eroded the sedentary

occupational base, the ALJ questioned vocational expert ("VE") Peter Manzi (R. at 31).

Considering the VE's testimony, and Plaintiff's age, education, work experience, and

RFC, the ALJ concluded there were jobs that Plaintiff could perform, such as

information clerk, calculator machine operator, telephone quotation clerk, charge

account clerk, or addresser (R. at 31). Therefore, the ALJ found Plaintiff was "not

disabled" within the meaning of the Act (R. at 32).

### 2. The Plaintiff's Claims

Plaintiff alleges (a) that the Appeals Council erred in failing to reverse or remand

the ALJ's decision based upon new and material evidence consisting of a medical source statement from Plaintiff's primary care physician, office notes from Plaintiff's orthopedic surgeon, and additional medical records; and (b) that the ALJ's RFC determination was not supported by substantial evidence. Plaintiff's Brief, pp. 1-5.

### a. The Appeals Council Did Not Err in Determining That Plaintiff's New Evidence Was Not an Adequate Basis for Reversing or Remanding the ALJ's

The Appeals Council shall consider "new and material" evidence if it "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. § 404.970(b); see also § 416.1470(b); Perez v. Chater, 77 F.3d 41, 45 (2d Cir.1996). The Appeals Council "will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 404.970(b); see § 416.1470(b). "'Weight of the evidence' is defined as the balance or preponderance of evidence; the inclination of the greater amount of credible evidence to support one side of the issue rather than the other." HALLEX: Hearings, Appeals and Litigation Manual I-3-3-4 (S.S.A. 2009), available at http://www.ssa.gov/OP_Home/hallex/I-03/I-3-3-4.html. Even if "the Appeals Council denies review after considering new evidence, the [Commissioner]'s final decision necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." Perez, 77 F.3d at 45. Accordingly, the additional evidence becomes part of the administrative record reviewed by the district court. Id. at 45-46. The role of the district court is to review whether the Appeals Council's action was in conformity with these regulations. See 42 U.S.C. § 405(g) (sentence five); see,

e.g., Woodford v. Apfel, 93 F.Supp.2d 521, 528 (S.D.N.Y. 2000) (concluding that the "Appeals Council erred when it determined that [the new] evidence was insufficient to trigger review of the ALJ's decision").

In this case, the Appeals Council received the following additional evidence: (1) treatment notes dated June 30, 2005, from orthopedic surgeon, Dr. Richard R. Whipple (R. at 275); (2)  a medical source statement ("MSS") and treatment notes from September 2005 through October 2006, from Dr. Inna Kudria, Plaintiff's primary care physician (R. at 264-74), and; (3) treatment notes dated January, March, and May of 2006, from orthopedic specialist, Dr. Kevin J. McGuire, M.D. (R. at 276-80).

On June 30, 2005, Dr. Whipple, Plaintiff's orthopedic surgeon, examined Plaintiff at a routine follow-up after her total hip replacements (R. at 275). About one year earlier, on June 17, 2004, Dr. Whipple replaced Plaintiff's right hip and on August 11, 2004, he replaced her left hip (R. at 187-91, 195-98). Dr. Whipple's June 2005 notes stated that Plaintiff was "pleased overall" and "did not have anywhere near the pain that she had before" (R. at 275). But, Plaintiff complained that "if she stands for an hour or walks for an hour, she does have discomfort especially on the left side." Id. On examination, Dr. Whipple found Plaintiff's hip motion and gait were "quite good," but noted her feet tended to point inward. Id. Finally, Dr. Whipple advised Plaintiff to use "anti-inflammatories as needed" and noted he would see Plaintiff again in two years to x-ray her hips. Id.

In Dr. Kudria's MSS, dated April 25, 2008,[4]  she opined that Plaintiff could

---

[4] The Court notes that Dr. Kudria's MSS is dated four months after the ALJ's decision and does not specify to what time period it applies. While the opinion may have been properly excluded from the Appeals Council's consideration if it did not relate to the period before the date of the ALJ's decision,

occasionally and frequently lift less than ten pounds, that she could stand and walk less than two hours in an eight hour work day, that she could sit less than six hours in an eight hour work day, that her ability to push and pull with her lower extremities was limited, that she could only occasionally balance and never climb, kneel, crouch, crawl, or stoop, and that she needed to avoid hazards such as machinery and heights (R. at 264-67).

Dr. Kudria also submitted office notes from September 2005 through October 2006 (R. at 268-74). Dr. Kudria's office notes indicate that Plaintiff sustained injuries in a car accident on December 11, 2005 (R. at 269). As a result, Plaintiff complained of neck, shoulder, and upper back pain (R. at 269-74, 276-80). Dr. Kudria prescribed Flexeril,[5] Lortab,[6] Motrin, physical therapy, and chiropractic care for Plaintiff's pain and referred her to Dr. McGuire (R. at 269-73).

On January 5, 2006, Dr. McGuire diagnosed Plaintiff with whiplash of the neck and spine, shoulder pain, and idiopathic scoliosis (R. at 277). Dr. McGuire recommended Plaintiff continue taking the medications prescribed by Dr. Kudria and attend physical therapy. Id. On March 2, 2006, Dr. McGuire noted that Plaintiff was "better but she is not without significant complaints" of right shoulder pain and continued back pain with some numbness (R. at 279). Upon examination, Dr. McGuire found "mildly positive" signs of shoulder impingement on the right side, but full range of motion. Id. He advised Plaintiff to continue her medications and physical therapy. Id. On

---

neither the Appeals Council, nor the Commissioner have objected to Dr. Kudria's MSS on this basis(R. at 5, 8). See 20 C.F.R. §§ 404.970(b), 416.1470(b).
[5] Flexeril is a preparation of cyclobenzaprine hydrochloride, which is indicated for use in the treatment of muscle spasms. Physicians' Desk Reference 966 (63rd ed. 2009) [hereinafter PDR].
[6] Lortab is a preparation of hydrocodone bitartrate and acetaminophen, which is used to relieve moderate to moderately severe pain. Id. at 3143.

May 4, 2006, Dr. McGuire noted Plaintiff's shoulder pain was "now resolved" but referred her for an MRI because of "recalcitrant back pain" (R. at 280).

The Appeals Council received and considered this additional evidence, and concluded that the ALJ's decision remained correct (R. at 4-8). The Appeals Council explained:

> We found that this information does not provide a basis for changing the Administrative Law Judge's decision. We considered the medical source statement from Inna Kudria, M.D., but the doctor's office notes are not reflective of such limitations, further no other medical source of record has indicated limitations of that severity. Likewise the office note from Richard Whipple, M.D., indicates that the claimant is pleased overall and he doesn't plan to have her back for two years. We also considered the office notes from Kevin McGuire, M.D., regarding the claimant's treatment after the automobile accident. It appears that the claimant's problem resolved we only have notes from January 5, 2006 to May 4, 2006.

(R. at 5).

The Court concludes that the Appeals Council properly applied the regulations in concluding that the ALJ's decision was consistent with the evidence of record. As discussed below, because the weight of the evidence was not contrary to the ALJ's decision, there was not an adequate basis for review. See, e.g., Alvarado v. Barnhart, 432 F.Supp.2d 312, 319-20 (W.D.N.Y. 2006) (upholding the Appeals Council's denial of review where new evidence included a treating physician's opinion that Plaintiff suffered a meniscal tear and could not work until it was repaired, but no other evidence indicated a meniscal tear requiring surgery, and the rest of the evidence supported the ALJ's conclusion that Plaintiff could perform the full range of medium work); Green v. Barnhart, No. 07-CV-0023, 2009 WL 68828, at *9-10 (W.D.N.Y. Jan. 6, 2009) (finding the Appeals Council satisfied their duty under 20 C.F.R. § 404.970(b) when it concluded

that an MRI report did not provide an adequate basis to review the ALJ's decision because it "only reaffirmed the evidence in the record"); accord  Mancuso v. Comm'r of Soc. Sec., No.1:06-CV-930, 2008 WL 656679, at *6 (N.D.N.Y. Mar. 6, 2008); Edwards v. Barnhart, No. 3:06-CV-402, 2007 WL 708802, at *9-13, *16 (D. Conn. Mar. 6, 2007). Moreover, it is clear to the Court that the additional evidence submitted to the Appeals Council only reaffirmed the ALJ's conclusions.

In his January 15, 2008 decision, the ALJ concluded that Plaintiff could lift, carry, push and pull less than ten pounds frequently and ten pounds occasionally; stand or walk for two hours for sixty minute stretches interposed with sitting breaks; walk only short distances; sit six hours for sixty minutes stretches interposed with standing or walking breaks; occasionally balance, climb stairs and ramps, crawl, crouch, stoop, or kneel; never climb ladders, ropes, or scaffolds; and never be exposed to unprotected heights (R. at 26).

The ALJ's conclusions are consistent with the findings of Plaintiff's orthopedic surgeon, Dr. Whipple. For example, in February 2005, Dr. Whipple advised Plaintiff to avoid heavy lifting and agreed that she could not do her past work as a health aide or certified nursing assistant (R. at 170). However, Dr. Whipple encouraged Plaintiff to find work that was more sedentary in nature (R. at 170). In December of 2004, Dr. Whipple advised Plaintiff that although "for life she needs to be somewhat cautious with [her hips,] she should be able to do almost everything" (R. at 171). The additional evidence from Dr. Whipple is consistent with his earlier notes. In June of 2005, Dr. Whipple noted Plaintiff's complaints of discomfort with extended standing or walking, but he did not advise treatment beyond "anti-inflammatories as needed" (R. at 275). Dr. Whipple never

10

indicated Plaintiff had any greater restrictions than those in the ALJ's RFC
determination.

    The ALJ's conclusions are also consistent with the medical findings of Dr.
Warren Silverman, M.D. (R. at 203-08). On January 11, 2005, Plaintiff was examined by
Dr. Warren Silverman, M.D., at the request of her former employer, Columbia County
Health Department, to assess Plaintiff's fitness to perform her work as a health aide and
certified nursing assistant (R. at 203-08). Dr. Silverman's examination revealed that
Plaintiff was unable to fully squat (R. at 206), had "persistent abnormalities of gait," and
had flat feet that put extra stress on her knees and ankles, all of which "contraindicated"
"mechanically increase[ing] the weight applied to her frame" (R. at 207). Dr. Silverman
recommended Plaintiff avoid lifting over twenty-five pounds "repetitively," lift fifty pounds
only occasionally, and avoid squatting or heavy lifting that would require squatting (R. at
208). Dr. Silverman opined Plaintiff could not perform her past work without restriction.
Id. The ALJ's conclusions that Plaintiff can lift, carry, push, and pull less than ten
pounds frequently, and ten pounds occasionally, are certainly not contrary to Dr.
Silverman's findings, as the ALJ determined Plaintiff had even greater restrictions.

    Consultative examiner, Amelita Balagtas, M.D., came to similar conclusions on
May 16, 2005. Dr. Balagtas performed an orthopedic evaluation at the request of the
State agency (R. at 217-19). Upon examination, she found a "pulling sensation" in
Plaintiff's hip joints with forward flexion of the spine, tenderness in both hips, limited
range of motion in the right hip, and 4.5 out of 5 strength in both lower extremities (R. at
218). Dr. Balagtas concluded Plaintiff "would have some limitations in activities that
require bending, lifting prolonged sitting, and prolonged standing and walking" (R. at

11

219). Dr. Balagtas' findings are consistent with the ALJ's conclusions that Plaintiff can sit and stand for only sixty minutes at a time and walk for only short distances (R. at 26).

The ALJ's conclusions are also supported by the second consultative examiner's findings. To update Plaintiff's medical record before her hearing, the ALJ requested another consultative examination on September 5, 2007, which was performed by Dr. William Rogers (R. at 246-56). Upon examination, Dr. Rogers noted Plaintiff had "moderate scoliosis," "point tenderness on the lateral aspects of both hips," limited range of motion in both hips, "some discomfort" with hip flexion,  and limited range of motion in the lumbar spine (R. at 255). Dr. Rogers noted Plaintiff had internal rotation of both feet while she walked. Id. Dr. Rogers' diagnosis included, "intermittent left-sided sciatica" (R. at 256). Dr. Rogers concluded Plaintiff could frequently lift and carry up to ten pounds, and occasionally lift and carry up to twenty (R. at 246); could sit seven hours a day for up to three hours at a time, stand five hours a day for up to two hours at a time, and walk only two hours in a day for up to thirty minutes at one time (R. at 247); could occasionally operate foot controls (R. at 248); could never climb ladders or scaffolds and only occasionally climb stairs, climb ramps, balance, stoop, kneel, crouch, or crawl (R. at 249); could never be exposed to unprotected heights; and could only occasionally be exposed to extreme heat, extreme cold, or vibrations (R. at 250).  Dr. Rogers' findings were also less restrictive than the ALJ's determinations, and thus, offer further support for the ALJ's conclusions.

The ALJ's conclusions are also consistent with Plaintiff's testimony.[7] Plaintiff

---

[7] On May 3, 2005, Plaintiff completed a function report as part of her disability application (R. at 128-38). At that time, Plaintiff reported somewhat greater restrictions than those she testified to on November 7, 2007. For example, in the 2005 form, Plaintiff indicated that she could not stand for more than thirty

testified she cannot lift more than twenty-five pounds (R. at 299). She stated that standing all day or for "too long" causes stiffness, pain in her hips, and sciatic pain. Id. Damp or cold weather causes achiness and stiffness. Id. She cannot sit "too long" and she "cannot squat." Id. Plaintiff specified that she can sit for an hour before she gets stiff and needs to stand up and stretch (R. at 301-02). Similarly, she testified that she can stand for one hour before she needs to sit down. Id. Plaintiff testified that she had difficulty walking, but "[o]nly when I'm in pain. I have difficulty in the snow and when it's icy" (R. at 302). She told the ALJ she could mop or vacuum, fix meals, and shop, although she did not lift heavy loads during these activities. Id. Plaintiff described her involvement in her church, saying she attended weekly services, prepared Sunday school lessons for about four hours during the week, and taught a forty-five minute Sunday school class each week (R. at 302-04). Plaintiff described her part-time work as a massage therapist (R. at 292-94, 299-300). Plaintiff testified that she would give three to four massages about three days a week (R. 293-94). Each massage required Plaintiff to be on her feet for a full hour (R. at 300). Plaintiff's testimony did not indicate greater limitations than those included in the ALJ's RFC determination.

Finally, even considering the additional evidence, the weight of the evidence is not contrary to the ALJ's decision. Dr. Whipple's June 2005 note did not indicate any

---

minutes "in one spot" (R. at 133). However, in her 2007 testimony, Plaintiff stated she could stand for up to one hour (R. at 300, 302). It appears the ALJ credited Plaintiff's later testimony over her earlier statements. See (R. at 26-29) (stating that the ALJ credited the limitations to which Plaintiff testified). The Court notes that the ALJ was entitled to credit some of Plaintiff's statements and not others in his credibility analysis. Social Security Ruling 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *4 (SSA) ("[T]he adjudicator need not totally accept or totally reject the individual's statements. Based on a consideration of all of the evidence in the case record, the adjudicator may find all, only some, or none of an individual's allegations to be credible. The adjudicator may also find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree.").

greater limitations than those in the ALJ's RFC determination (R. at 275). Dr. McGuire's notes indicated that Plaintiff suffered injuries to her neck, back, and shoulders as a result of a car accident (R. at 276-80). However, these injuries are not reflected in any other evidence and the record as a whole indicates that Plaintiff's accident-related injuries were only temporary. For example, Plaintiff testified before the ALJ on November 7, 2007, almost two years after the car accident, and did not mention any limitations, pain or other symptoms associated with the incident (R. at 286-318). Instead, when the ALJ asked Plaintiff why she was disabled, she discussed her hip impairment and related limitations, which the ALJ ultimately included in his RFC determination (R. at 299-302).

Dr. Kudria's MSS was somewhat more restrictive than the ALJ's RFC determination, but that alone was not an adequate basis to trigger review of the ALJ's decision (R. at 264-74). For example, the ALJ found Plaintiff could sit for six hours in a work day for sixty minutes at a time (R. at 26), but Dr. Kudria opined Plaintiff could sit for "less than" six hours in a workday (R. at 265). The ALJ found Plaintiff could stand or walk for two hours in a work day but was limited to walking short distances and could stand for only sixty minutes at a time (R. at 26), whereas Dr. Kudria opined Plaintiff could stand or walk "less than" two hours in a workday (R. at 264). Similarly, the ALJ found Plaintiff could occasionally balance, climb stair and ramps, crawl, crouch, stoop, and kneel (R. at 26), but Dr. Kudria opined that Plaintiff could never climb, kneel, crouch, crawl, or stoop (R. at 265). Furthermore, a claimant's RFC is an issue reserved to the Commissioner, and thus to the extent Dr. Kudria's opinions infringe upon this reserved issue, they are not properly considered medical opinions entitled to deference.

14

See 20 C.F.R. §§ 404.1527(e), 416.927(e) ("Opinions on some issues, such as the examples that follow, are not medical opinions"); §§ 404.1527(e)(2), 416.927(e)(2) ("Although [the Commissioner] considers opinions from medical sources on issues such as whether [a claimant's] impairment[] meets or equals. . . [a] Listing[,] . . . [a claimant's] residual functional capacity . . . , or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner."). Moreover, as discussed throughout this decision, the remainder, and the weight of the evidence supports the ALJ's conclusions.

After carefully reviewing the evidence of record, including the additional evidence, the Court concludes that the Appeals Council did not err when it declined to remand the ALJ's decision. The medical opinions and Plaintiff's own testimony lend support to the ALJ's conclusions in this case. Therefore, the Court recommends the Commissioner's decision be upheld.

### b.  The ALJ's RFC Is Supported by Substantial Evidence

The Plaintiff also argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ found Plaintiff could occasionally crawl, crouch, and kneel. Plaintiff's Brief, p. 4. Plaintiff argues that this portion of the ALJ's RFC is not supported by substantial evidence because Dr. Silverman found Plaintiff was "unable to squat more than 20% of a full knee bend" and because Dr. Kudria opined Plaintiff could never climb, kneel, crouch, crawl or stoop. Plaintiff's Brief, pp. 4-5.

The Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff can occasionally crawl, crouch and kneel (R. at 26). Although, as Plaintiff points out, Dr. Kudria found that Plaintiff could not crawl, crouch, or kneel, and Dr.

15

Silverman opined that Plaintiff could not fully squat, the ALJ was not required to accept

these opinions in light of other medical opinions indicating that Plaintiff may do these

activities, at least occasionally. See Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998)

("[A]n ALJ is free . . . to choose between properly submitted medical opinions . . .")

(internal quotation marks and citations omitted). Furthermore, the Court notes that Dr.

Silverman did not say that Plaintiff was never able to squat. Dr. Silverman opined that

Plaintiff should "avoid requirements to squat" (R. at 208), but his primary concern was

that Plaintiff's limited squat would lead to "performing an unsafe lifting technique" if she

were to continue her past work as a health aide (R. at 207). Dr. Silverman explained:

> Proper lifting technique minimizing the stress on the lumbosacral
> segments involves the ability to lift with weights closely approximating the
> central axial spine in an upright position. In order to accommodate
> limitations with regard to flexion of the hip, [Plaintiff] would have to bend
> forward and extend, performing an unsafe lifting technique. This, by itself,
> would create an increased risk of harm to herself and to the patients under
> her care by virtue of the inability to perform appropriate safe lifting
> technique.

Id. Dr. Whipple, Plaintiff's orthopedic surgeon, agreed that Plaintiff should avoid "heavy

lifting" (R. at 170). However, Dr. Whipple did not indicate Plaintiff could never crawl,

crouch or kneel. Instead, Dr. Whipple encouraged Plaintiff to seek sedentary-type work

(R. at 170) and assured she "should be able to do almost everything" (R. at 173).

Similarly, Dr. Balagtas did not find any limitations to crawling, crouching or kneeling (R.

at 217-19). Consultative Examiner Dr. Rogers explicitly found that Plaintiff could

occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl (R. at

249). These opinions constitute evidence "a reasonable mind might accept as adequate

to support [the] conclusion" that Plaintiff can occasionally crawl, crouch and kneel. See

Richardson, 402 U.S. at 401. Therefore, the Court concludes that substantial evidence

supports the ALJ's determination.

## Conclusion

Based on the foregoing, the Court recommends that Plaintiff's motion for

judgment on the pleadings should be DENIED and Defendant's motion for judgment on

the pleadings should be GRANTED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: May 27, 2009

Syracuse, New York

## Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the

Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in

accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of

Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an</u>**

**extension of such time waives the right to appeal the District Court's Order.**

Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892

F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

      **SO ORDERED**.

      DATED: May 27, 2009

      Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge